UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL EDWARDS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VALLEJO, et al.,<br><br>Defendants. | No. 2:18-cv-2434 MCE AC<br><br><br>ORDER |

This matter is before the court on plaintiff's motion to compel discovery, ECF No. 26, which is referred to the undersigned pursuant to Local Rule 302(c)(1). The matter came on for hearing on July 31, 2019, following the parties' submission of a joint statement regarding the discovery dispute. ECF Nos. 25, 27. Michael Haddad appeared on behalf of plaintiff Carl Edwards, and Katelyn Knight appeared on behalf of defendants.

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, asserting claims that arise from his July 2017 arrest in Vallejo. Defendants are the City of Vallejo, the former Vallejo Chief of Police, and four officers who were members of the Vallejo Police Department ("VPD") during the relevant period—including officer Spencer Muniz-Bottomley ("Bottomley"), who is now employed by the Sonoma County Sheriff's Office ("SCSO"). ECF No. 1. Through this motion, plaintiff seeks an order (1) compelling the VPD to produce Bottomley's hiring and background investigation records in response to a request for production; (2) compelling nonparty

1

the SCSO to produce similar records for Bottomley in compliance with a subpoena duces tecum; and (3) permitting the photographing of the officers' tattoos during their depositions. For the reasons stated below, the court will grant plaintiff's motion in part, and deny it in part.

## I. RELEVANT BACKGROUND

In his complaint, plaintiff asserts claims of unreasonable seizure, excessive force, unlawful arrest, and malicious prosecution, along with related Monell,[1] supervisory liability, and state law claims for violation of the Bane Act, battery, false arrest, and negligence. As relevant to this discovery motion, plaintiff's Monell and negligence claims are based, in part, on allegations that the City improperly hired Bottomley (and the other officers), and unlawfully condoned the defendant officers' membership in a subversive "gang" within the VPD which might be evidenced by matching tattoos and a pattern of unlawful conduct. ECF No. 1 at 12-13, 18. In addition, plaintiff's malicious prosecution claim is partly based on an allegation that the officers falsified their police reports regarding the arrest in order to support the criminal charges filed (and later dropped) against plaintiff. Id. at 9.

## II. DISCUSSION

A. Production of Bottomley's Hiring and Background Investigation Records from the VPD

*1. Standards Governing Requests for Production*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). In response to a request for production of documents under Rule 34, a party is to produce all relevant documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Under Rule 37(a), a party may move for an order compelling disclosure or discovery if "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The party seeking to compel discovery has the initial

---

[1] See Monell v. Dep't of Social Services, 436 U.S. 658 (1978).

burden to establish that its request is proper under Rule 26(b)(1). If the request is proper, "[t]he party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07-CV-200 JM (PCL), 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009). The party resisting discovery is "required to carry a heavy burden of showing" why discovery should be denied. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

*2. Request for Production No. 6*

Plaintiff seeks to compel the City to produce documents responsive to the following request with respect to Officer Bottomley only[2]:

Plaintiff's RFP No. 6:

> Any and all DOCUMENTS concerning the hiring, appointment, and promotion of each INVOLVED OFFICER, including complete documentation of any investigation into each INVOLVED OFFICER" [sic] background and fitness to be a law enforcement officer, if such officer was hired within the three years preceding the INCIDENT.

Defendants' Response:

> Objection is made that this request is vague, ambiguous, overbroad and seeks information outside the scope of permissible discovery. Further, this request seeks information protected by the constitutional right of privacy and Official Information Privilege as disclosure of the requested documents would interfere with the operations of the Vallejo Police Department and invade the right to privacy of Vallejo Police Officers. See Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987); Martinez v. City of Stockton, 132 F.R.D. 677 (E.D. Cal. 1990); Cal. Gov't Code § 6254; Cal. Pen. Code § 832.7; Cal. Evid. Code § 1043 et seq. See also Declaration of Lieutenant Cheatham served herewith. Further objection is made to service of these requests as a joint request to multiple parties.

ECF No. 25.1 at 13-14 (Haddad Decl. Ex. A).

*3. Analysis*

a. Relevance

Plaintiff seeks production of documents concerning Bottomley's "hiring, appointment, and promotion . . . including complete documentation of any investigation into [his] background

---

[2] Because the other three officers were hired more than three years before the incident, plaintiff's counsel agreed to limit RFP No. 6 to Officer Bottomley, who was hired in June 2015. ECF No. 25.1 at 29-31 (Haddad Decl. Ex. C).

3

and fitness to be a law enforcement officer." ECF No. 25.1 at 13. Defendants "do[] not dispute that records of discipline for similar conduct, citizen complaints, records of training, and performance evaluations could be relevant." JS at 23. However, defendants contest the relevance of "hiring and background investigation records," which will include Bottomley's "finances, marital status, high school grades, and interviews with his neighbors." Id. Defendants have not provided a privilege log describing the documents being withheld. However, they submit that, in general, California requires rigorous background screening of police officers, which consists of:

- Background Narrative Report (CR 1953(g))
- Personal History Statement (CR 1953(c));
- DOJ/FBI Fingerprint Returns and Firearms Clearance (CR 1953(e)(3));
- Driving Record Check (CR 1953(e)(4));
- Local Law Enforcement Agency Record Checks (CR 1953(e)(3));
- Credit Records Check (CR 1953(e)(11));
- Education Verification (CR 1953(e)(5));
- Citizenship/Age Verification (CR 1953(e)(1 and 2));
- Military History Check (CR 1953(e)(10));
- Dissolution of Marriage Check (CR 1953(e)(8));
- Employment History Checks (CR 1953(e)(6));
- Relatives/Personal References Checks (CR 1953(e)(7));
- Neighborhood Checks (CR 1953(e)(9)); and
- Medical/Psychological Clearances (CR 1954(e) and 1955(f)).

JS 21.

The court concludes that Bottomley's hiring and background investigation records are relevant in this case. These records are particularly relevant to plaintiff's claims against the City, as they could lead to discovery of information regarding the City's pre-hire knowledge of Bottomley's fitness to serve. See City of Canton v. Harris, 489 U.S. 378, 388-89 (1989) (holding that a municipality's "deliberate indifference" to the rights of individuals with whom police come into contact can amount to a "policy or custom" for Monell claim purposes); Soto v. City of Concord, 162 F.R.D. 603, 614-15 (N.D. Cal. 1995) (personnel files "may be relevant on the issues of credibility, notice to the employer, ratification by the employer and motive of the officers") (internal citation omitted). Plaintiff specifically alleges that the City and the Chief of Police "failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline" the defendant officers. ECF No. 1 at 13 ¶ 50. Bottomley's employment application

and background investigation records speak directly to this claim. See T.D.P. v. City of Oakland, No. 16-CV-04132-LB, 2017 WL 3026925, at *3 (N.D. Cal. July 17, 2017) (requiring defendants to produce all documents concerning the "hiring, appointment and promotion" of the defendant officers, finding hiring and appointment records relevant to plaintiff's Monell claim alleging that the City "failed to properly hire" the defendant officers).

Defendants argue that Bottomley's application and background materials are not relevant because a single instance of inadequate screening cannot form the basis of a Monell claim, citing Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 411 (1997). JS at 22. However, in Bryan County, the Supreme Court did not actually decide that issue. Rather, the Court held that "[e]ven assuming without deciding that proof of a single instance of inadequate screening could ever trigger municipal liability," the evidence in that case was insufficient to do so. Id. at 412. Admittedly, the Court in Bryan County set a very stringent test for actually proving such a Monell claim. See id. at 411 ("Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"). However, that standard actually *necessitates* a rigorous review of an officer's hiring and background investigation records, which supports the undersigned's conclusion that the records requested in RFP No. 6 are relevant. See Bryan Cty., 520 U.S. at 413-15 (applying the "deliberate indifference" test to a Monell claim for inadequate pre-hire background screening of a single police officer and evaluating the contents of the officer's criminal record); Doggett v. Perez, 348 F. Supp. 2d 1179, 1194-96 (E.D. Wash. 2004) (granting summary judgment to defendant on Monell claim for improper hiring after analyzing in detail the contents of the officer's employment application and background investigation report).

Plaintiff also seeks Bottomley's hiring records as a potential source for discovering evidence of dishonesty. The court finds these records also relevant in this regard. Bottomley's credibility is substantively at issue based on plaintiff's allegation that he falsified the police report regarding the arrest.

Having concluded that the information sought is within the scope of discovery, the court turns next to defendants' assertion of privilege.

       b. <u>Official Information Privilege</u>

Defendants contend that these records are protected by the official information privilege. Privileges are to be "strictly construed" because they "impede full and free discovery of the truth." <u>Eureka Financial Corp. v. Hartford Acc. and Indemnity Co.</u>, 136 F.R.D. 179, 183 (E.D. Cal. 1991). The Supreme Court has long noted that privileges are disfavored. <u>Jaffee v. Redmond</u>, 518 U.S. 1, 9 (1996). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." <u>Tornay v. United States</u>, 840 F.2d 1424, 1426 (9th Cir. 1988). "[P]rivileges are to be construed especially narrowly when asserted by officers or cities in federal civil rights actions." <u>Mason v. Stock</u>, 869 F. Supp. 828, 834 (D. Kan. 1994).

In civil rights cases brought under federal statutes, questions of privilege are resolved by federal law. <u>Kerr v. U.S. Dist. Court for N. Dist. of California</u>, 511 F.2d 192, 197 (9th Cir. 1975). Where—as in this case—the complaint alleges both substantive federal and state law claims concerning the same alleged conduct, the federal law of privilege controls. <u>Agster v. Maricopa Cty.</u>, 422 F.3d 836, 839-40 (9th Cir. 2005). "Federal common law recognizes a qualified privilege for official information." <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1033 (9th Cir. 1990) ("Government personnel files are considered official information."). "To determine whether the information sought is privileged, courts must weigh the potential benefits of the disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." <u>Sanchez</u>, 936 F.2d at 1033-34; <u>see also</u> <u>Martinez v. City of Stockton</u>, 132 F.R.D. 677 (E.D. Cal. 1990).

However, before a court will engage in this balancing of interests, the party asserting the privilege must properly invoke it. <u>Soto</u>, 162 F.R.D. at 613. In order to invoke the official information privilege, "[t]he claiming official must 'have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced' and state with specificity the rationale of the claimed privilege." <u>Kerr</u>, 511 F.2d at

6

198. The party invoking the privilege must at the outset make a "substantial threshold showing" by way of a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. Soto, 162 F.R.D. at 613.

> The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

Id. (citing Kelly v. City of San Jose, 114 F.R.D. 653, 670 (N.D. Cal. 1987)). If a party has submitted a sufficient affidavit, then the court will proceed to balance the parties' interests. Id. "If the court concludes that a defendant's submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents in issue." Id.

Defendants provided a declaration by VPD Lieutenant of Support Services Bureau, Steve Cheatham, attesting that he "ha[s] personal knowledge of the documents requested by Plaintiff to the extent they exist, including departmental complaints and civil complaints, and personnel records, all administrative investigations, and the confidential and privileged information requested by plaintiff related to the INCIDENT . . . ," which are collected and maintained by the VPD. ECF No. 25.1 at 47-48 (Haddad Decl. Ex. G). Cheatham avers that the confidentiality of the documents has been maintained and that "[e]ven a carefully crafted Protective Order would not protect the department from the adverse effects of disclosing the Requested Documents insofar as said documents contain the Police Department's official information like personnel records, disciplinary actions, civil complaints, Internal Affairs' reviews and findings." Id. at 48. He further maintains that police officers "have a privacy interest in protecting such documents from disclosure" and that "the department's self-critical analysis is intended to better the department as opposed to providing information to Plaintiff or the public at large." Id. He asserts that maintaining "the confidentiality of Internal Affairs materials" allows for open discussion and criticism of the conduct of officers and suggestions of ways to improve without fear of civil

7

1  liability. Id. at 48-49. "Disclosure of these records would chill that interest and remove the
2  protections for officers to be candid in order to improve the department." Id. at 49.
3  　　　　The court finds this affidavit insufficient to support the official information privilege with
4  respect to Bottomley's hiring and background investigation records. The affidavit does not
5  satisfy the court that Lt. Cheatham "personally reviewed the material in question." Soto, 162
6  F.R.D. at 613. First, as plaintiff points out, the affidavit states that Lt. Cheatham has "personal
7  knowledge" of the documents requested—not that he "personally reviewed" them. Were this the
8  only cause for concern, the court might ignore the distinction as overly formalistic. However,
9  examination of the affidavit as a whole provides no basis to conclude that it specifically pertains
10 to documents concerning the "hiring, appointment, and promotion" of the officers involved, or
11 any related background investigation. Aside from general references to "personnel records" and
12 "personnel files," the affidavit nowhere discusses pre-hire job application materials or pre-hire
13 background investigations. Cheatham's discussion of the department's "self-critical analysis"
14 and the need to maintain confidentiality of "Internal Affairs materials" that may criticize officers
15 or suggest improvements do not provide any obvious basis not to disclose an officer's
16 employment application and background investigation records.
17 　　　　As this court has previously observed, "[t]he purpose of the affidavit in support of an
18 assertion of the official information privilege 'is to provide the court with the information it needs
19 to make a reasoned assessment of the weight of the interests that line up, *in the particular
20 situation before the court*, against the requested disclosure.'" Duenez v. City of Manteca,
21 No. 2:11-cv-1820 LKK AC, 2013 U.S. Dist. LEXIS 24954, at *31-34 (E.D. Cal. Feb. 22, 2013)
22 (quoting Kelly, 114 F.R.D. at 670) (emphasis in original). By failing to address the hiring and
23 pre-employment background investigation records plaintiff is seeking, the affidavit falls short of
24 its purpose. As a result of inadequately invoking the privilege, defendants' objection based on the
25 official information privilege is overruled and the requested documents will be ordered produced,
26 subject to the following limitations. See Soto, 162 F.R.D. at 613.
27 　　　　These documents are to be produced pursuant to the protective order already in effect in
28 this case. The information produced shall be redacted to omit Bottomley's addresses, contact

8

information, social security number, driver's license number, date of birth and other personal identifiers (except for his name), in addition to any salary or tax information, medical information, and information identifying third parties. Defendants will have fourteen days to provide the requested information.

B. <u>Subpoena to Nonparty SCSO</u>

Plaintiff also seeks an order compelling production of documents from the SCSO pursuant to Fed. R. Civ. P. 45.

*1. Governing Standards*

Under Federal Rule 45, any party may serve a subpoena that commands a nonparty "to produce documents, electronically stored information, or tangible things . . . ." Fed. R. Civ. P. 45(a)(1)(D). Subpoenas are subject to the same relevance requirements of Rule 26(b) discussed above, and therefore may command the production of documents which are "nonprivileged [and] . . . relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, a party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). In addition, a nonparty subject to a subpoena duces tecum "deserve[s] extra protection from the courts." <u>High Tech Medical Instrumentation v. New Image Indus.</u>, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing <u>United States v. Columbia Broadcasting System</u>, 666 F.2d 364, 371–72 (9th Cir. 1982).

*2. Subpoena and VPD Objections*

Plaintiff served a Rule 45 subpoena duces tecum on Bottomley's current employer, SCSO, commanding production of the following information regarding Bottomley:

> 1) Any and all documents regarding his hiring, background investigation, and application for employment with the [SCSO], including but not limited to any Personal History Statements (POST form 2-251),[3] witness/reference questionnaires and interviews.

---

[3] POST form 2-251 is used for hiring all law enforcement officers in the state of California. It contains a personal history statement, witness/reference questionnaires and interviews, admissions of any criminal history, and any previous employment disciplinary action, among other things.

9

> 2) Any and all documents received from the Vallejo Police Department.
>
> 3) All documents regarding any and all citizen, law enforcement and/or other complaints, including all records of any complaints/charges of misconduct, investigation, conclusions, final disposition, review, and any resulting discipline, retraining or other action.

ECF No. 25.1 at 39 (Haddad Decl. Ex. D). SCSO did not respond to the subpoena, but defense counsel sent plaintiff's counsel a letter objecting to the subpoena on grounds of privacy, relevance, and privilege. ECF No. 25.2 at 30-31 (Knight Decl. Ex. D). At the hearing on this motion, the parties confirmed that the SCSO did not respond with its own objections to the subpoena; instead, the SCSO relied on defense counsel's assurance that defendants would be serving their own objections.

   *3. Analysis*

   a. Procedural Issues

Two procedural concerns somewhat cloud plaintiff's motion to compel compliance with the Rule 45 subpoena, only one of which the court recognized in time to raise it at the hearing. First, there is no indication that plaintiff provided the SCSO with notice of the instant motion to compel. However, based on the parties' representations at the hearing that SCSO did not, itself, respond or object to the subpoena, the court no longer believes the lack of notice presents an obstacle to the motion's resolution. See Fed. R. Civ. P. 45(d)(2)(B)(i) ("*If an objection is made*, . . . [a]t any time, *on notice to the commanded person*, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.") (emphases added).

Second, upon closer examination of the subpoena, it appears that this court is not the proper court in which to seek enforcement of the subpoena under Rule 45. Under the federal rules, as amended in 2013, a subpoena must be issued by the court where the underlying action is pending, but the authority to decide a motion to compel or to quash or modify that subpoena is vested with the court where compliance is required. See Fed. R. Civ. P. 45(a)(2), (d)(2), (d)(3); Europlay Capital Advisors, LLC v. Does, 323 F.R.D. 628, 629 (C.D. Cal. 2018); Hammer v. City

of Sun Valley, No. 1:13-CV-211-EJL, 2019 WL 958360, at *5–6 (D. Idaho Feb. 26, 2019). The same provision of Rule 45 cited regarding the notice issue specifies that, "[i]f an objection is made, . . . the serving party may move *the court for the district where compliance is required* for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i) (emphasis added). On this jurisdictional question, unlike the notice concern, the court cannot conclude that the lack of objection by the SCSO negates the issue. This is because the rest of Rule 45 reinforces the requirement that motions regarding subpoenas must be heard in the district where compliance is required.[4]

Here, the subpoena required the production of documents to the Oakland, California office of plaintiff's counsel. Accordingly, "the court for the district where compliance is required" is the Northern District of California.[5] Nevertheless, although the motion to compel should have been brought initially in the Northern District of California, in this instance the motion can be decided by this court. The requirement that motions be made in the court in which compliance is required was intended "[t]o protect local nonparties" by assuring "local resolution of disputes about subpoenas." Adv. Comm. Notes to 2013 Amend. to Rule 45. In addition, "Rule 45(f) allows a motion to compel to be transferred to the issuing court upon consent of the subpoenaed party." In re Shoot the Moon, LLC, No. 15-60979, 2019 WL 2482860, at *3 n.3 (Bankr. D. Mont. May 20, 2019); see Fed. R. Civ. P. 45(f) (the court where compliance is required may

////

---

[4] See Fed. R. Civ. P. 45(d)(3)(A) ("On timely motion, *the court for the district where compliance is required* must quash or modify a subpoena that . . . ." (emphasis added) ), (e)(2)(B) (after being notified of privileged information being produced in response to subpoena, the receiving party "may promptly present the information under seal to *the court for the district where compliance is required* for a determination of the claim" (emphasis added)); Adv. Comm. Notes to 2013 Amend. to Rule 45 ("Under Rules 45(d)(2)(B), 45(d)(3), and 45(e)(2)(B), subpoena-related motions and applications are to be made to *the court where compliance is required* under Rule 45(c). Rule 45(f) provides authority for that court to transfer the motion to the court where the action is pending.") (emphasis added).

[5] There is also authority that the proper district is based on the location of the subpoenaed nonparty's headquarters, in this case also the Northern District of California. See Music Grp. Macao Commercial Offshore Ltd. v. Does, 82 F. Supp. 3d 979, 982, 984 (N.D. Cal. 2015) (holding that there is "no question" that the proper district to hear a motion to compel compliance with a Rule 45 non-party subpoena is where the nonparty is headquartered).

"transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances").

In this case, the court deems the SCSO's lack of participation in the objections to the subpoena, and resulting lack of appearance to argue the instant motion, as consent to the motion being heard and decided by this court. See Shoot the Moon, 2019 WL 2482860, at *3 n.3 (deeming nonparties response to and participation in the motion to compel proceedings as consent, although the motion should have been brought in another district); AngioScore, Inc. v. TriReme Med., Inc., No. 12-cv-03393-YGR (JSC), 2014 WL 6706873, at *1-2 (N.D. Cal. Nov. 25, 2014) (labeling as "[p]rocedurally [d]efective" motion to quash Rule 45 subpoena filed in the issuing court rather than court where compliance was required but exercising discretion to nonetheless hear the motion because all parties and the subpoenaed nonparty agreed to have the motion heard in the issuing court). The court is unaware of any burden sustained by the nonparty in this instance, where its interests were represented by defense counsel local to this court where the action is pending. Accordingly, as deciding the motion will not subvert the interests of the Rule 45 amendments, the court will proceed to the merits of the motion to compel. However, the parties are now on notice as to the requirements of amended Rule 45 and are expected to comply with those procedures in the future.

b. Relevance

In this subpoena, plaintiff seeks from the SCSO three categories of documents: No. 1, documents regarding Bottomley's "hiring, background investigation, and application for employment"; No. 2, "[a]ny and all documents" received from the VPD; and No. 3, documents regarding complaints against Bottomley and their investigation.

As to category No. 1, plaintiff argues that Bottomley's SCSO hiring and background investigation documents are discoverable for the same reasons as his VPD hiring and background investigation documents. The court cannot see how Bottomley's application to a subsequent employer would be relevant to plaintiff's negligence or Monell claims against Bottomley's previous employer. However, given the centrality of Bottomley's credibility to plaintiff's case generally, and to his malicious prosecution claim specifically, the court agrees that Bottomley's

12

written employment application to the SCSO, signed under penalty of perjury, is relevant in that it might contain material differences from the application submitted to the VPD only three years prior. Nevertheless, the court does not find relevant the remainder of the documents described in request No. 1, namely the SCSO's records of any background investigation of Bottomley and "witness/reference questionnaires and interviews" not incorporated in the POST form 2-251. This conclusion is bolstered by the court's duty to avoid imposing undue burden on a nonparty. See Fed. R. Civ. P. 45(d)(1); High Tech Medical, 161 F.R.D. at 88.

Turning to category No. 2, in the joint statement, plaintiff does not specifically address the need for "[a]ny and all documents" the SCSO received from the VPD regarding Bottomley. Such a generalized request, without explanation, does not leave the court with a sufficient basis upon which to determine its likelihood of producing relevant material. At this juncture, the SCSO will not be compelled to produce documents responsive to category No. 2 of the subpoena.

Finally, the court finds relevant the request in category No. 3 for records regarding complaints against Bottomley and their investigation. The court is not persuaded by defendants' argument that possible misconduct committed after the incident giving rise to this action would be irrelevant simply because it post-dated the event. See United States v. Hinostroza, 297 F.3d 924, 928 (9th Cir. 2002) ("[O]ur precedent has squarely resolved in the government's favor the issue that subsequent Rule 404(b) evidence may be relevant and admissible.") (citing United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir. 1991) ("By its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts."). The court agrees with plaintiff that both prior and subsequent complaints against Bottomley regarding excessive use of force, unlawful seizure, and untruthfulness are relevant and discoverable.

### c. Privilege & Privacy Objections

Defendants' written objections to the subpoena cited both the official information privilege and Bottomley's right to privacy. ECF No. 25.1 at 41-42. In the parties' joint statement, defendants do not pursue the official information privilege claim, and in any event, the court would find such privilege inadequately invoked for the reasons described above.

////

Turning to Bottomley's privacy objection, federal courts recognize a constitutionally-based right of privacy that can be raised in response to discovery requests. Soto, 162 F.R.D. at 616; Stallworth v. Brollini, 288 F.R.D. 439, 444 (N.D. Cal. 2012) (noting that "the United States Supreme Court has recognized a constitutional right to privacy, more specifically, a constitutional right to nondisclosure of one's personal information"). "The right to informational privacy, however, is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." In re Crawford, 194 F.3d 954, 959 (9th Cir. 1999) (citation and quotation marks omitted). "Resolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted." Soto, 162 F.R.D. at 616.

"With respect to the disclosure of police files, courts have recognized that 'rights of privacy are not inconsequential.'" Walker v. N. Las Vegas Police Dep't, No. 2:14-CV-01475-JAD-NJK, 2015 WL 8328263, at *5 (D. Nev. Dec. 8, 2015) (citing Kelly, 114 F.R.D. at 660). "However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments." Id. Defendants argue that plaintiff's proffered need for the SCSO documents at issue does not meet the "compelling need and clear relevance" standard referenced in Matter of Hawaii Carp, 88 F.R.D. 518, 524 (D. Hi. 1980), a case in which an accounting firm was required to produce certain employee personnel files. JS at 29-30. However, the court places greater reliance on the fact that in cases involving police personnel files, "district courts in the Ninth Circuit have found that the privacy interests police officers have in their personnel files do not outweigh the civil rights [plaintiffs'] need for the documents." Soto, 162 F.R.D. at 617 (collecting cases).

Applying the balancing test to Bottomley's SCSO application materials and SCSO complaint records, the court concludes that plaintiff's need for the documents outweighs any invasion of Bottomley's privacy rights, particularly in light of the stipulated protective order already in effect in this case. As in Soto, plaintiff's "need for the requested personnel files is great" because "the information contained [therein] . . . is unlikely to be available from any other source[.]" Id. Moreover, "through constitutional amendment and national legislation the people

have made it clear that the policies that inform federal civil rights laws are profoundly important." Kelly, 114 F.R.D. at 660 (citations omitted).

Finally, the existence of a protective order—limiting the use of the material to this litigation, and limiting disclosure to counsel of record, experts, the court, and deposition witnesses if necessary, with all materials to be returned or destroyed at the close of the case (ECF No. 19 at 7-8, 11-12 (incorporated by order, ECF No. 20))—will minimize the impact of this disclosure on Bottomley's privacy rights. See Soto, 162 F.R.D. at 616-17 (noting that a "carefully drafted protective order could minimize the impact of this disclosure" and describing an order that specified "only Plaintiff, his counsel, and his experts may have access to the material, and that copies of such material will be returned to Defendants at the conclusion of the case"); see also Walker, 2015 WL 8328263, at *6 (concluding that existing protective order would minimize the impact of the disclosure); California Serv. Employees Health & Welfare Tr. Fund v. Advance Bldg. Maint., No. C06-3078 CW (BZ), 2010 WL 11575276, at *1 (N.D. Cal. Apr. 5, 2010) ("Any concerns regarding confidentiality can be addressed by the relevant provision of the Protective Order."); Martinez v. City of Stockton, 132 F.R.D. 677, 683 (E.D. Cal. 1990) (allowing the discovery of police officer personnel records subject to a protective order).

Accordingly, defendants' objections to the SCSO's production of the subpoenaed records described in category Nos. 1 and 3 are overruled.

### d. Conclusion as to Subpoena Compliance

For the foregoing reasons, the SCSO will be ordered to comply with the subpoena, which is hereby modified to require production of the following records: (1) any written employment application materials signed by Bottomley under penalty of perjury, including his POST form 2-251; and (2) all documents regarding any and all citizen, law enforcement and/or other complaints against Bottomley, including all records of any complaints/charges of misconduct, investigation, conclusions, final disposition, review, and any resulting discipline, retraining or other action.

These documents are to be produced pursuant to the protective order already in effect in this case. Based on plaintiff's stated willingness to exclude certain types of information (JS at 26), the SCSO may exclude from the subpoena "those documents within Officer Bottomley's

hiring and background investigation that pertain to any psychological exam, medical exam, polygraph test results, [and] financial information[.]" Further, as with the VPD personnel records, the SCSO records shall be redacted to omit Bottomley's addresses, contact information, social security number, driver's license number, date of birth and other personal identifiers (except for his name), in addition to any salary or tax information, medical information, and information identifying third parties. The SCSO will have twenty-one days to provide these records.

### C. Photographing the Defendant Officers' Tattoos

For two months the parties have met and conferred regarding the inspection and photographing of the defendant officers' tattoos on their non-private body parts during their upcoming depositions—which the parties have agreed to videotape. JS at 8-11. In his complaint, plaintiff alleges that the four officers have similar "sleeve" tattoos covering the entirety of one or both of their arms. ECF No. 1 ¶ 33. Plaintiff claims that tattoo commonality in California police departments may indicate membership in a "gang" of officers with tattoos representing "notches" symbolizing the officers' conquests; further, plaintiff alleges, on information and belief, that the "gang" of officers—including the defendant officers—operates subversively within the VPD to promote excessive force, false allegations, and a code of silence among its members. Id. With the Joint Statement, plaintiff attaches photographs from the body camera footage of the arrest incident, which show the officers in short-sleeved uniforms with tattoos covering one or both of each officer's arms. ECF No. 25.1 at 51-61 (Haddad Decl. Ex. H).

Plaintiff provides, and the court has found, no direct authority for requiring the photographing or formal visual examination of a deponent. Plaintiff does not identify what rule of discovery governs this request, but the court finds most applicable Rules 30, 34, and 35, read in conjunction, of course, with Rule 26(b). Rule 30(c)(1) provides that the "examination and cross-examination of a deponent proceed as they would at trial . . . ." Rule 34 permits a party to obtain documents and "any designated tangible things" within the scope of Rule 26(b). Fed. R. Civ. P. 34(a)(1)(B). Rule 35 permits a court to "order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a

suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). A Rule 35 examination may be ordered "only on motion for good cause." Fed. R. Civ. P. 35(a)(2)(A); <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 118 (1964) (examination should not be had unless the requesting party has established "that each condition as to which the examination is sought is really and genuinely in controversy and good cause exists for ordering each particular examination").

The court concludes that, while the defendant officers' tattoos are discoverable, plaintiff has not made a showing of good cause sufficient to compel their inspection at this juncture. The existence of commonalities across the officers' tattoos is plainly relevant to plaintiff's <u>Monell</u> claim against the City for unlawfully condoning the existence of a "gang" within the VPD, identifiable by their tattoos. Were plaintiff requesting purely physical evidence associated with this claim, that would likely be enough. See <u>Harris v. Athol-Royalston Reg'l Sch. Dist. Comm.</u>, 200 F.R.D. 18, 20-21 (D. Mass. 2001) (finding that Rule 34 read in conjunction with Rule 26(b) must be broadly construed to require the production of relevant physical evidence, including handwriting exemplars). While plaintiff likens his request to the physical reenactments of events commonly required of deponents, especially in personal injury cases, the court finds a request to photograph the defendant officer's bodies more similar to requests to produce a party's fingerprints. A handful of courts have held that fingerprints are an "identifying physical characteristic" falling within the scope of Rule 34 and/or "a physical condition" discoverable under Rule 35. See <u>Padgett v. City of Monte Sereno</u>, No. 5:04-CV-3946 JW (RS), 2005 WL 8161813, at *5 (N.D. Cal. July 25, 2005) ("The language of Rules 26 and 34 is sufficiently broad to encompass the obligation to provide fingerprints and palm prints."); <u>Harris v. Athol-Royalston Reg'l Sch. Dist. Comm.</u>, 206 F.R.D. 30, 33 (D. Mass. 2002) (finding that pursuant to Rule 34 or 35, a party may obtain the fingerprints of another party); <u>Alford v. Northeast Insurance Co.</u>, 102 F.R.D. 99, 101 (N.D. Fla. 1984) (concluding that "the taking and furnishing of fingerprints is a matter within the contemplation of Rule 34" and that "fingerprints would be a physical condition" similar to "blood group" under Rule 35's "broad definition").

However, each of these courts simultaneously held or implied that, regardless of whether Rule 34 or 35 applies to the production of fingerprint samples, good cause for the production

17

must be shown. See Padgett, 2005 WL 8161813, at *5 ("While Rule 34 is accordingly available as a discovery mechanism to compel the production of fingerprints, the standard a moving party must meet by necessity mirrors the "good cause" requirement in Rule 35."); Harris, 206 F.R.D. at 33 ("[R]egardless of whether the request is made pursuant to Rule 34 or 35, a party may obtain the fingerprints of another party . . . upon establishing that such evidence is relevant and further, that there is good cause for obtaining the fingerprints of such other party or person."); Alford, 102 F.R.D. at 101 (concluding that fingerprints should be furnished under Rule 34 and finding that good cause was shown).

The court finds this fingerprints caselaw persuasive, because both fingerprints and tattoos imprinted on a body are "identifying physical characteristic[s]," the production of which may be compelled as evidence in appropriate cases. See Gilbert v. California, 388 U.S. 263, 266-67 (1967) (holding handwriting "like the . . . body itself" to be an "identifying physical characteristic," subject to production); Padgett, 2005 WL 8161813, at *5 ("As with requests for handwriting exemplars under Rule 34, requests for fingerprints ask for 'identifying physical characteristics' . . . ." (citing Gilbert)). However, absent any discovery responses or other facts confirming plaintiff's otherwise speculative allegations of commonality among the defendant officers' tattoos, plaintiff has not demonstrated good cause for compelling the requested production. See Schlagenhauf, 379 U.S. at 118 (good cause requirement would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant).

Therefore, plaintiff's motion to compel the photographing and/or examination of the defendant officers' tattoos at their depositions will be denied, without prejudice to its renewal upon a stronger showing of cause.

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's amended motion for discovery (ECF No. 26) is GRANTED in part and DENIED in part;

2. Defendant the City of Vallejo is ordered to produce documents responsive to

| | |
|---|---|
| 1 | plaintiff's Request for Production No. 6, in compliance with the instructions given |
| 2 | above, within 14 days of the date of entry of this order; |
| 3 | 3. Nonparty the Sonoma County Sheriff's Office is ordered to comply with plaintiff's |
| 4 | subpoena duces tecum, as modified above, within 21 days of the date of entry of |
| 5 | this order; and |
| 6 | 4. The motion is DENIED without prejudice as to the compelled photographing of |
| 7 | the defendant officers' tattoos at their depositions. |

IT IS SO ORDERED.

DATED: August 5, 2019

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE